Kyle C. Bisceglie (KB 6052)
OLSHAN GRUNDMAN FROME
ROSENZWEIG & WOLOSKY LLP
744 Broad Street, 16th Floor
Newark, New Jersey 07102
(973) 331-7200
*Attorneys for Plaintiffs*

U.S. DISTRICT COURT

2009 DEC 16  P 12: 56

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| MARSHALL C. PHELPS AND RICHARD T. GERSTNER,<br><br>Plaintiffs,<br><br>-against-<br><br>D&S CONSULTANTS, INC. AND STEVEN A. DE CHIARO,<br><br>Defendants. | Civil Action No.<br><br><br><br>COMPLAINT |

Plaintiffs Marshall C. Phelps and Richard T. Gerstner, through their counsel and for their Complaint against defendants D&S Consultants, Inc. and Steven A. De Chiaro, allege as follows:

Nature of the Action

1. Plaintiffs are investors in defendant D&S Consultants, Inc. ("DSCI"), a New Jersey corporation founded by defendant Steven A. De Chiaro. In September 2009, defendants announced that DSCI had redeemed plaintiffs' shares, representing approximately 15% of DSCI stock, at a price arbitrarily determined by De Chiaro and his allies on DSCI's Board. Plaintiffs neither sought, nor consented to, the purported redemption. Nothing in law or equity permits defendants to unilaterally value, and misappropriate plaintiffs' DSCI stock. In fact, defendants' conduct violates the express language of the Amended Shareholders Agreement which governs the rights of outside investors in DSCI, such as plaintiffs, as well as New Jersey law corporations

law. Since the purported redemption, defendants have taken the position that plaintiffs cannot exercise any of their contractual rights as shareholders under the Amended Shareholders Agreement, including the designation of a director to DSCI's Board and the right to participate certain corporate actions. Plaintiffs now seek a decree of specific performance requiring DSCI to honor plaintiffs' rights as shareholders, a declaratory judgment of plaintiffs' rights, including ownership of the shares and, alternatively, an award of damages.

## Parties

2. Plaintiff Marshall C. Phelps is a U.S. citizen and resident of the State of Connecticut.

3. Plaintiff Richard T. Gerstner is a U.S. citizen and resident of the State of Connecticut.

4. Defendant D&S Consultants, Inc. is a corporation organized under the laws of the State of New Jersey, with its principal place of business at 12 Christopher Way, Eatontown, New Jersey 07724. DSCI is a worldwide support provider to the Department of Defense and U.S. civilian agencies. Founded in 1992, it has grown to become a successful, privately-owned business.

5. Defendant Steven A. De Chiaro is a resident of the State of New Jersey. At all times relevant, De Chiaro has served as the Chairman of the Board of Directors of DSCI, and its largest shareholder, holding approximately 48% of its shares. By written agreement, he may select a majority of DSCI's Board.

## Jurisdiction and Venue

6. This Court has jurisdiction pursuant to 28 U.S.C. § 1332, because this is a civil action between citizens of different states, and the amount in controversy exceeds $75,000, exclusive of interests and costs.

7. This Court has personal jurisdiction over defendants DSCI and De Chiaro, because (i) DSCI maintains its principal place of business, and regularly conducts business, in the State of New Jersey and (ii) De Chiaro is a citizen and a resident of the State of New Jersey. In addition, all parties have consented to this Court's jurisdiction.

8. Venue properly lies in this District pursuant to 28 U.S.C. § 1391 because most, if not all, of the wrongful acts, omissions, events and conduct complained of herein arose or occurred in the State of New Jersey. In addition, DSCI resides in this District within the meaning of 28 U.S.C. § 1391(c).

## Factual Background

9. Plaintiffs first invested in DSCI beginning in 2002. DSCI then was owned largely by De Chiaro, with small interests held by some DSCI employees. Plaintiff Phelps and Plaintiff Gerstner ultimately acquired 9,931 and 5,938 shares of DSCI, respectively, paying in excess of $6,500,000. Plaintiffs' shares represent approximately 15% of DSCI's outstanding common stock.

10. Plaintiffs provided additional financial support to DSCI, beginning on December 28, 2006, by guaranteeing its indebtedness with TD Bank (referred to herein as the "TD Bank Loan"). Plaintiff Phelps and Plaintiff Gerstner collectively and personally guaranteed in excess of $2,241,120 of DSCI's debt. Plaintiffs' personal guarantees were instrumental in maintaining and strengthening the financial position of DSCI, and significantly contributed to the positive growth of the company.

11. When DSCI required additional capital to make acquisitions and fund expansion of operations, Mr. Phelps approached a number of his personal business contacts including executives as Lehman Brothers with whom Mr. Phelps had a personal banking relationship. Mr. Phelps relationship enabled the investment of $20 million from Lehman Brothers Holdings, Inc.

3

through its affiliate LB I Group, Inc. ("LB"). Mr. Phelps received no fees for brokering this investment into DSCI.

The Shareholders Agreements

12. After LB made a significant equity investment in DSCI, on or about June 1, 2007, plaintiffs entered into a Shareholders Agreement with DSCI, De Chiaro and LB to memorialize the rights of outside investors and to establish requirements for corporate governance, among other things. Collectively, the signatories to the Shareholders Agreement owned more than 90% of DSCI's shares, with the balance scattered among its employees. The Shareholders Agreement established extensive limitations on the operation of DSCI's Board and its business; it also restricted the transfer of DSCI stock and granted other rights and protections to plaintiffs. The parties later amended the Shareholders Agreement, executing the First Amendment to Shareholders Agreement, on or about May 27, 2008.

13. In 2008, De Chiaro brought suit against LB, plaintiffs and others. These claims were settled in early 2009. In connection with the settlement, plaintiffs, De Chiaro, and LB entered into an Amended and Restated Shareholders Agreement, dated January 23, 2009 (the "Amended Shareholders Agreement"). The Amended Shareholders Agreement granted extensive contractual rights to, and protections for, plaintiffs, including the right to designate a director for DSCI's Board and to inspect DSCI's records. The Amended Shareholders Agreement also covered in detail the limited circumstances under which a shareholder could either transfer, or be compelled to transfer, shares.

The Purported Redemption

14. In September 2009, DSCI closed a new credit facility with the Bank of America that paid off the TD Bank Loan previously guaranteed by plaintiffs. As of that date, plaintiffs' personal guarantees were no longer needed by defendants to maintain a line or credit or

4

revolving credit facility. De Chiaro acted quickly in his bid to appropriate plaintiffs' valuable shares at a bargain price.

15. By letter dated September 25, 2009, DSCI informed Plaintiff Phelps that:

> As approved by the Board of Directors of the Company on September 25, 2009, your 9,931 shares of Company common stock have been repurchased. Enclosed please find a check in the amount of $2,611,853 in full payment for such shares.

16. Similarly, by letter dated September 25, 2009, DSCI informed Plaintiff Gerstner that:

> As approved by the Board of Directors of the Company on September 25, 2009, your 5,938 shares of Company common stock have been repurchased. Enclosed please find a check in the amount of $1,561,694 in full payment for such shares.

The letters to plaintiffs dated September 25, 2009 are referred to as the "September 25 Letters."

17. Neither Plaintiff had direct or indirect notice or forewarning of any alleged Board meeting on September 25, 2009, and neither had offered his shares of stock for sale at any price.

18. Plaintiffs' nominee to the Board had resigned on September 21, 2009.

19. Upon information and belief, the two Board members appointed by LB did not participate in any alleged meeting or vote or provide agreement in writing as required by the Amended Shareholders Agreement.

20. Defendants' improper redemption of plaintiffs' shares at the low share price imposed by De Chiaro enriched all remaining shareholders, the overwhelming majority of whom are De Chiaro and LB.

21. De Chiaro induced the Board members loyal to him to vote on the purported purchase before plaintiffs could designate a replacement. The Board meeting, if one indeed occurred, violated the Amended Shareholders Agreement, which requires, among other things, a seven-person board as a prerequisite to corporate action per Section 2.1(a) which states "[t]he

Board *shall* consist of seven (7) members ... of which ... one (1) is to be nominated by Mr. Phelps."

22.  Defendants' action violated Section 2.1(a) in at least two ways since the Board lacked seven (7) members and failed to include Mr. Phelps' nominee.

23.  By correspondence dated September 28, 2009 and October 1, 2009, plaintiffs protested and repudiated the purported redemption of their DSCI stock. Neither plaintiff has ever cashed the checks mailed with the September 25 Letters.

24.  Article 4 of the Amended Shareholders Agreement exclusively governs the manner through which plaintiffs' DSCI stock may be transferred. In Section 4.01, the Amended Shareholders Agreement provides:

> No Shareholder shall Transfer any of its Company Stock during the term of this Agreement other than as permitted in this Article IV.

The Amended Shareholders Agreement thereafter devotes eight pages to describe permitted methods of transfer. No mention is made of any transfer by unilateral decree of De Chiaro and a rump Board, much less at an arbitrary price. The purported redemption is thus barred by the express language of the Amended Shareholders Agreement.

25.  Since the September 25 Letters, defendants have refused to allow plaintiffs to nominate a DSCI Director, as plaintiffs are entitled to do pursuant Section 2.01 of the Amended Shareholders' Agreement, attend the DSCI Annual Shareholders Meeting, as plaintiffs are entitled to do as shareholders of DSCI, and inspect the books and records of DSCI, as plaintiffs are entitled to do pursuant to Article 3 of the Amended Shareholders Agreement. In short, defendants have stripped away all of plaintiffs' contractual rights based on their improper claim to have unilaterally re-purchased plaintiffs' DSCI shares.

6

Defendants' Attempt to Justify Their Overreaching

26.  Plaintiffs have asked repeatedly for the alleged basis for DSCI's actions. After a prolonged silence, De Chiaro purportedly announced at a shareholder meeting that plaintiffs and DSCI "agreed to" purchase plaintiffs' shares. DSCI's counsel then advised that DSCI had redeemed plaintiffs' shares in reliance upon a purported set of Bylaws, dated May 25, 2007. De Chiaro and DSCI claim reliance upon Section 6 of Article III of the Bylaws which provides:

> The Board of Directors may establish an Employee Stock Repurchase Plan (ESRP). This plan affords employees of [DSCI] the opportunity to *voluntarily* sell Shares to [DSCI] as determined by the Board of Directors. The Board of Directors may set a transaction fee regarding the repurchase of Shares *voluntarily* sold to [DSCI] through the ESRP. This plan also affords [DSCI] the opportunity to acquire Shares from Shareholders on a *non voluntary* basis as determined by the Board of Directors. The Board of Directors may set a premium for Shares repurchases on a *non voluntary* basis through the ESRP. (emphasis in original.)

27.  This provision states that DSCI's Board "may establish" an "Employee Stock Repurchase Plan." Plaintiffs have never seen such a written plan on the terms now claimed by De Chiaro and DSCI.

28.  De Chiaro's bid to improperly redeem plaintiffs' shares suffers from a host of legal flaws each of which is independently sufficient to prohibit defendants' conduct.

29.  The purported Bylaw provision and the ESRP does not extend to non-employee shareholders, such as plaintiffs. Plaintiffs are not, and never have been, employees of DSCI.

30.  Multiple provisions in the Bylaws make clear the distinction between employee stockholders and non-employee stockholders and undermined DSCI's strained reliance including but not limited to Article III, sections 2 - 4, 6 and 13.

31.  More importantly, New Jersey law does not permit New Jersey corporations to render a class of shares redeemable through their Bylaws. Rather, New Jersey law requires that

7

the redeemability of shares be stated in the certificate of incorporation. The DSCI certificate of incorporation does not provide for any classes of redeemable shares. *See* 14A N.J. STAT. § 14A:7-6 (Redeemable Shares) (2009).

32. To the extent the Bylaw purports to grant the Board the power to purchase shares with prices set at the Board's whim, it is invalid and unenforceable under New Jersey law.

33. Even assuming such a Bylaw were valid, the action by the DSCI's Board is invalid for several reasons. DSCI cannot rely on the Bylaws to the extent they conflict with the Shareholders agreement and Amended Shareholders Agreement. More specifically, any such Bylaws have been amended by the Shareholders Agreement and the Amended Shareholders Agreement, each adopted by more than 90% of DSCI's shareholders.

34. The Amended Shareholders Agreement, signed by De Chiaro and DSCI, expressly bars the purported transfer claimed to have occurred in the September 25 Letters.

35. Under the Amended Shareholders Agreement, a seven-person board is required to be in place at all times. Once a vacancy occurred, defendants were obligated to permit plaintiffs to fill the vacancy. Thus, action by DSCI's Board without plaintiffs' nominee is illegal.

36. The use of any such Bylaw for the improper purpose of redeeming plaintiffs' shares at a bargain price renders the Board action inequitable, a breach of fiduciary duty and void. De Chiaro's use of such a Bylaw to misappropriate plaintiffs' shares at a below market price represents willful misconduct that may not be indemnified by DSCI.

<u>First Claim for Relief</u>
(For Declaratory Judgment)

37. Plaintiffs repeat their allegations in paragraphs 1-36.

38. As set forth above, defendants claim to have redeemed plaintiffs' shares of DSCI. In fact, defendants have no right to redeem these shares and plaintiffs continue to own their shares.

39. There is a ripe and justiciable dispute between the parties relating to plaintiffs' ownership of DSCI common stock.

40. As set forth above, plaintiffs are entitled to a declaration that they continue to own their shares of DSCI common stock.

Second Claim for Relief
(For Declaratory Judgment)

41. Plaintiffs repeat their allegations in paragraphs 1-40.

42. Defendants' refusal to acknowledge plaintiffs' ownership of their DSCI shares, their right to nominate a director to the Board of DSCI, together with defendants' refusal to permit plaintiffs to attend the DSCI Annual Shareholders Meeting or inspect the books and records of DSCI, constitute breaches of the Amended Shareholders Agreement.

43. None of the grounds offered by defendants justifies the actions taken against plaintiffs; and defendants have failed, despite proper demand, to recognize plaintiffs' rights under the Amended Shareholders Agreement.

44. There is a ripe and justiciable dispute between the parties relating to parties' rights and obligations under the Amended Shareholder Agreement, and the conduct of defendants in purported reliance on the Bylaws.

45. As set forth above, plaintiffs are entitled to a declaration that they continue to hold all of the rights granted to them as DSCI shareholders and under the Amended Shareholders Agreement, including without limitation, the right to designate a director, to receive financial information, to inspect corporate records, to vote at shareholders meetings, and to receive

dividends. Plaintiffs are further entitled to a decree that all Board actions taken without notice to their designee, and all shareholder votes taken without their participation, are invalid.

Third Claim for Relief
(For Specific Performance)

46. Plaintiffs repeat their allegations in paragraphs 1-45.

47. Defendants' refusal to acknowledge plaintiffs' ownership of their DSCI shares, their right to nominate a director to the Board of DSCI, together with defendants' refusal to permit plaintiffs to attend the DSCI Annual Shareholders Meeting or inspect the books and records of DSCI, constitute breaches of the Amended Shareholders Agreement.

48. None of the grounds offered by defendants justifies the actions taken against plaintiffs; and defendants have failed, despite proper demand, to recognize plaintiffs' rights under the Amended Shareholders Agreement.

49. There is a ripe and justiciable dispute between the parties relating to parties' rights and obligations under the Amended Shareholder Agreement, and the conduct of defendants in purported reliance on the Bylaws.

50. As set forth above, plaintiffs are entitled to a preliminary and permanent injunction requiring defendants to honor the rights granted to plaintiffs as DSCI shareholders and under the Amended Shareholders Agreement, including without limitation, the right to designate a director, to receive financial information, to inspect corporate records, to vote at shareholders meetings, and to receive dividends. Plaintiffs are further entitled to a preliminary and permanent injunction barring DSCI from acting without plaintiffs' participation per the terms of the Amended Shareholders Agreement.

Fourth Claim for Relief
(For Breach of Contract)

51. Plaintiffs repeat their allegations in paragraphs 1-50.

52. Plaintiffs are further entitled to an award of attorneys' fees pursuant to Section 611 of the Amended Shareholders Agreement. Any such award should be paid exclusively by De Chiaro, without corporate indemnification in light of his willful misconduct.

Fifth Claim for Relief
(Breach of Fiduciary Duty)

53. Plaintiffs repeat their allegations in paragraphs 1-52.

54. Defendant Di Chiaro was at all relevant times an officer and the Chairman of the Board of Directors of DSCI, as well as the controlling shareholder of DSCI.

55. By virtue of these positions, Di Chiaro owed fiduciary duties to the plaintiffs, including the duties of care, good faith, loyalty, and candor.

56. Di Chiaro breached all of these fiduciary duties to plaintiffs by improperly convening the September 25 Meeting among certain DSCI directors, and directing the unilateral valuation and forced redemption of plaintiffs' DSCI stock, without regard for the requirements of the Amended Shareholders' Agreement or the fair value of plaintiffs' DSCI stock. De Chiaro, as controlling shareholder, stood to personally benefit from the exclusion of plaintiffs from DSCI and the forced redemption of plaintiffs' DSCI stock at less than fair value.

57. As a direct and proximate result of Di Chiaro's self-dealing and breaches of fiduciary duty, plaintiffs have sustained substantial financial losses and damages, and will continue to sustain substantial financial losses and damages in the future.

Sixth Claim for Relief
(Breach of Fiduciary Duty)

58. Plaintiffs repeat their allegations in paragraphs 1-57.

59. Alternatively, assuming that the purported Bylaw is valid and enforceable, plaintiffs have suffered substantial financial losses as a result of defendants' arbitrary and deficient valuation.

60. Defendants owed plaintiffs a fiduciary duty to provide them with fair value for their shares, because defendants were direct beneficiaries in any share repurchase, they further bear the burden of establishing the entire fairness of the transaction, including fairness as to the process of valuation and the value attributed to the shares. Defendants have breached their fiduciary duties in all respects. The purchase price attributed to the shares is a fraction of their actual worth.

61. As a direct, proximate and foreseeable result of defendants' breaches of fiduciary duty, plaintiffs have been damaged in an amount to be determined at trial, but believe do exceed $800 per share as of December 2009.

## Request for Discovery

Pursuant to Rule 26 of the Federal Rules of Procedure, demand is hereby made for defendants to provide plaintiffs all discovery as to all issues set forth herein.

## Prayer for Relief

WHEREFORE, plaintiffs Phelps and Gerstner respectfully request that the Court:

a) enter judgment for plaintiffs awarding the full relief sought in Counts I and II;

b) award plaintiffs the injunctive relief sought in Count III;

c) alternatively, award plaintiffs their actual damages, together with pre- and post-judgment interest, in an amount to be determined at trial;

d) award plaintiffs punitive damages due to De Chiaro's willful and malicious conduct;

e) award plaintiffs' costs and attorneys' fees; and

f) award such other relief as the Court deems just and proper.

Dated: New York, New York
       December 16, 2009

OLSHAN GRUNDMAN FROME
ROSENZWEIG & WOLOSKY LLP

By: _____
    Kyle C. Bisceglie
    *Attorneys for Plaintiffs*
    744 Broad Street, 16th Floor
    Newark, New Jersey 07102
    (973) 331-7200

OF COUNSEL

OLSHAN GRUNDMAN FROME
ROSENZWEIG & WOLOSKY LLP

    Thomas J. Fleming
    Ellen V. Holloman
    Park Avenue Tower
    65 East 55th Street
    New York, New York 10022
    (212) 451-2300