UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| MARSHALL C. PHELPS AND RICHARD GERSTNER,  Plaintiffs,  v.  D&S CONSULTANTS, INC. AND STEVEN A. DE CHIARO,  Defendants/Third-Party Plaintiffs,  v.  JOSE UCLES,  Third-Party Defendant. | Civil Action No.: 09-6386 (FLW)  MEMORANDUM OPINION |

**ARPERT, U.S.M.J.**

This matter comes before the Court on Defendant/Third-Party Plaintiff D&S Consultants, Inc.'s ("DSCI") Motion to disqualify Blank Rome LLP ("Blank Rome") as counsel for Third-Party Defendant Jose Ucles ("Ucles") and to compel Blank Rome to turnover the entirety of its file regarding its prior representation of DSCI [dkt. entry no. 67]. The Court has fully reviewed the parties' written submissions and conducted oral argument on June 21, 2010. For the reasons set forth below, DSCI's Motion is granted.

**I.    BACKGROUND**

This action was filed on December 16, 2009 by Marshall C. Phelps ("Phelps") and Richard T. Gerstner ("Gerstner") against DSCI and Steven DeChiaro ("De Chiaro"). On February 22, 2010, DSCI filed a Third-Party Complaint against Ucles. At issue in this case is the application and meaning of various provisions of the parties' Shareholder Agreement, Amended

Shareholder Agreement, Settlement Agreement, Ucles' Executive Employment Agreement ("Employment Agreement") and its Amendment No. 2. DSCI's Motion seeks to disqualify Blank Rome from any further representation of Ucles based upon alleged conflicts of interest stemming from prior state court litigation wherein Blank Rome represented DSCI and, thus, a brief history of the earlier litigation is appropriate.

On July 15, 2008, Steven DeChiaro ("De Chiaro") brought suit in state court on behalf of DSCI against LBI Group, Inc., Marshall C. Phelps, Dennis King, Richard T. Gerstner, David Munoz, Jose Ucles and Joseph Steady ("Steady") alleging that these defendants breached the Shareholder Agreement. In that action, Blank Rome represented both Steady and Ucles neither of whom was a party to the Shareholder Agreement. On October 22, 2008, the Hon. Thomas W. Cavanagh, Jr., P.J.Ch. dismissed all of DeChiaro's claims against Steady and Ucles. On October 31, 2008, Blank Rome filed a declaratory judgment action on behalf of DSCI in state court seeking a determination of the parties' rights and responsibilities pursuant to the Shareholder Agreement and, specifically, whether DeCiaro was required to vote his shares to elect Ucles to DSCI's Board. On January 23, 2009, a settlement conference was conducted by the Hon. Thomas W. Cavanagh, Jr., P.J.Ch. at the Monmouth County Courthouse. On January 23, 2009, a Settlement Agreement and a Shareholder Agreement were each executed by DSCI, De Chiaro, Phelps, Gerstner and LBI. The parties have differing positions as to what role was played at the settlement conference and in other settlement efforts by attorney Adrienne Rogove ("Ms. Rogove") of Blank Rome. Ucles argues that "[n]either Ms. Rogove nor anyone else from Blank Rome participated in these [settlement] discussions because Blank Rome was not representing Ucles or DSCI in these matters." (Ucles Opp'n Br. at 10.) Ucles also argues that all

2

communications about the issues in the second state court action took place between Blank Rome and either Joseph Steady or Jose Ucles neither of whom are currently employed by DSCI. *Id.* at 14. Ucles further argues that "[s]ince all the members of DSCI's current management were represented by counsel other than Blank Rome in the prior actions, no confidential information was communicated to or shared with Blank Rome by these individuals." *Id.* Contrary to Ucles' position, DSCI argues that "Ms. Rogove participated in these negotiations on behalf of DSCI and reviewed, on behalf of DSCI, the language proposed by Ucles." (DSCI's Br. at 5.) Therefore, DSCI contends, Blank Rome should be disqualified from further representation of Ucles because "Blank Rome represented DSCI in state court litigation where it sought to enforce the Shareholder Agreement and the Employment Agreement and now has switched sides and is representing Ucles against DSCI regarding these very same agreements." (DSCI's Br. at 1.)

### A.  DSCI's Motion to Disqualify

DSCI argues that Blank Rome should be disqualified because its representation of Ucles violates the Rules of Professional Conduct (the "RPCs"). Specifically, DSCI cites RPC 1.9(a) and contends that Blank Rome formerly represented DSCI in a matter substantially related to its current representation of Ucles, which is materially adverse to DSCI. Therefore, DSCI argues, Blank Rome should be prohibited from representing Ucles.

DSCI asserts that "Blank Rome represented DSCI on numerous issues that are substantially related to Blank Rome's current representation of Ucles, both because confidential information was learned, and because facts relevant to the prior representation are both relevant and material to the current representation[.]" *Id.* at 16. DSCI further asserts that there are three levels of conflict that each demonstrate the substantially related nature of Blank Rome's prior

3

representation of DSCI and its current representation of Ucles.

DSCI argues that "[t]he first level of conflict stems from Blank Rome's representation of Ucles in litigation involving various agreements by and among the parties which were either at issue in the state court actions or were negotiated and executed as a result of the state court actions in which Blank Rome represented DSCI." *Id.* DSCI contends that Blank Rome, on behalf of DSCI, filed a "Complaint which sought to enforce the parties' Shareholder Agreement and to compel De Chiaro to vote his DSCI stock to elect Ucles, Phelps and Gerstner to DSCI's Board of Directors . . . [and] sought to enforce the Employment Agreement with DSCI." *Id.* DSCI also contends that "Blank Rome's prior representation of DSCI [and negotiation and execution of numerous agreements] resulted in it learning of confidential information concerning these agreements, which can now be used against DSCI in connection with Blank Rome's current representation of Ucles." *Id.* at 17. DSCI further contends that "[t]here can be no clearer conflict than one where an attorney represents an employee of a corporation in an action against the corporation alleging a breach of an agreement, and that agreement was a result of the attorney's former representation of the corporation." *Id.* (citing *DiGrandi v. Miller*, 2005 WL 1250316, *1-2 (N.J. Sup. Ct. Ch. Div. 2005).

Next, DSCI argues that "[t]he second level of conflict arises from Blank Rome's representation of DSCI in connection with the negotiation and execution of Amendment No. 2." *Id.* at 21. DSCI asserts that "Amendment No. 2 is now at issue because DSCI and De Chiaro filed a Third-Party Complaint against Ucles alleging breach of the non-compete clause contained in the amendment[.]" *Id.* DSCI argues that because Blank Rome previously represented DSCI in the negotiation of Amendment No. 2, its present representation of Ucles in the instant matter

4

constitutes side-switching that warrants disqualification. *Id.* at 22-23.

Moreover, DSCI argues that as DSCI's corporate counsel Blank Rome attended a shareholders meeting at which a board election took place and handled various other matters such as negotiations with lenders. *Id.* at 24. Additionally, DSCI contends that "[w]hether the focus is on the Shareholders Agreement, the Settlement Agreement and/or Amendment No. 2 to the Employment Agreement, Blank Rome cannot now represent Ucles in an action centered around the meaning and rights afforded in the very same agreements that were at issue in the litigation wherein DSCI was represented by Blank Rome." *Id.* at 20. Ultimately, DSCI contends that "[e]ven if the matters were not substantially related, the mere fact that Blank Rome was on one side of the equation and is now on the other side raises concerns that confidential information provided by DSCI is now being used to its detriment." *Id.*

### B. Ucles' Opposition to DSCI's Motion

Ucles opposes DSCI's Motion arguing that disqualification under RPC 1.9(a) is unwarranted because the facts underlying the instant matter and Blank Rome's prior work for DSCI are not substantially related. Ucles asserts that recently the New Jersey Supreme Court, in *City of Atlantic City v. Trupos*, 2010 WL 1641176, *10 (N.J. April 26, 2010), articulated the appropriate disqualification analysis under RPC 1.9 as follows:

> For purposes of RPC 1.9, matters are deemed to be 'substantially related' if (1) the lawyer for whom disqualification is sought received confidential information from the former client that can be used against the client in the subsequent representation of parties adverse to the former client, or (2) facts relevant to the prior representation are both relevant and material to the subsequent representation.

Ucles asserts that *Trupos* requires that "a substantial relationship must be proven with facts, not conjecture or unfounded surmise, because New Jersey no longer looks to the appearance of

5

impropriety as a factor in its analysis." *Id.* at 19. Ucles further asserts that in *Trupos* "the Court held that the law firm's representation of the City and its current representation of taxpayers in matters adverse to the City were not substantially related under RPC 1.9(a):

> Superficially, the law firm's involvement in both its prior representation of plaintiff and its current represenation of taxpayers' tax appeals touches the same subject matter: the propriety of municipal real estate tax assessment. That similarity, however, does not withstand closer scrutiny..."

(Ucles' Opp'n Br. at 17)(quoting *Trupos*, 2010 WL 1641176 at *10). Ucles maintains that "[l]ike the moving party in *Trupos*, DSCI fails to identify any confidential communications it shared with Blank Rome that could be used against it in this litigation . . . [and] [i]ndeed, the mere fact that 'the law firms's involvement . . . touches the same subject matter' does not warrant disqualification." *Id.* at 17-18 (quoting *Trupos*, 2010 WL 1641176 at *10).

Ucles argues that Blank Rome's representation of DSCI in the state court declaratory judgment action is not substantially related to the instant matter notwithstanding the various levels of conflict alleged by DSCI. *Id.* at 19. It is undisputed that Blank Rome filed the second state court action on behalf of DSCI to determine the parties' respective voting rights and obligations vis-a-vis the Shareholder Agreement and Ucles' Employment Agreement (neither of which are at issue in the instant litigation) and to enforce said agreements accordingly. *Id.* at 20. Ucles further asserts that "DSCI does not dispute or even address this; instead it argues that merely because the Shareholder Agreement and Ucles' Employment Agreement 'were at issue in the State Court Action when Blank Rome represented DSCI' (regardless of the factual circumstances that it was based upon) that Blank Rome should be disqualified." *Id.* Therefore, Ucles maintains, this alleged conflict does not warrant disqualification because it does not pass

the substantial relationship test. *Id.*

Next, Ucles argues that Blank Rome was not involved in the negotiation or execution of Amendment No. 2 to Ucles' Employment Agreement because "[a]s of December 8, 2008, approximately six weeks before Amendment No. 2 was entered into between DSCI and Ucles, DSCI passed a board resolution prohibiting Blank Rome from taking any further action on its behalf in the pending [State Court] litigation." *Id.* at 21. Therefore, Ucles argues that disqualification based upon DSCI's allegations of Blank Rome's involvement in the negotiation and execution of Amendment No. 2 to Ucles' Employment Agreement is unjustified.

Lastly, Ucles argues that "DSCI does not allege that Blank Rome's prior representation is substantially related to this litigation as now required by *Trupos*, but rather that the prior representation 'raises concerns that confidential information provided by DSCI is now being used to its detriment.'" *Id.* at 25 (citations omitted). Ucles maintains that DSCI's conflict claim based upon Blank Rome's status as "corporate counsel" fails based upon DSCI's failure to provide any specificity as to the nature of the "confidential information" because although "unspecified and conclusory 'concerns' may have passed muster under the 'appearance of impropriety' standard of RPC 1.9, that is no longer the test." *Id.* at 25 (quoting *Trupos*, 2010 WL 1641176 at *11) ("because the 'appearance of impropriety' standard no longer has any vibrancy when gauging the propriety of attorney conduct, surmise alone cannot support an order of disqualification").

### C. DSCI's Reply

In reply, DSCI argues that Blank Rome misstates the "substantially related" standard to require that the attorney for whom disqualification is sought actually receive confidential information. DSCI asserts that "[t]his mischaracterizes the test, which clearly provides an either

7

or standard. In other words the attorney receives confidential information or the two matters involve facts that are relevant and material to the subsequent representation." (DSCI's Reply at 5.)

DSCI argues that Blank Rome did receive confidential information despite the fact that "[a]ccording to Blank Rome, all of its communications in the State Court Action and during its prior corporate representation of DSCI were with two DSCI officers who are no longer with DSCI . . . and, therefore, the confidential communications that Blank Rome received from the representatives of its client should be disregarded." *Id.* at 5-6. DSCI further argues that "[t]he ultimate question concerning their disqualification is not, as Blank Rome suggests, if they participated in the negotiations, rather the focus is on whether they received confidential communications during the course of that prior representation that can now be used to disadvantage the former client." *Id.* at 9. DSCI contends that confidential communications can be used to disadvantage DSCI because "[i]n Mr. Ucles' counterclaims, he seeks a declaration that his covenant not-to-compete, in his Employment Agreement, is not valid and that DSCI breached his Employment Agreement by limiting his job responsibilities." *Id.* Finally, DSCI asserts that "[t]he sole basis for Blank Rome's argument that the matters are not substantially related is that the prior litigation involved different provisions of these agreements than are at issue in the current litigation; [however,] Blank Rome has not pointed to any court in any jurisdiction that permits this type of legal hairsplitting." *Id.* at 10.

## II. DISCUSSION AND ANALYSIS

The New Jersey Rules of Professional Conduct govern the conduct of attorneys admitted to this Court. *Greig v. Macy's Northeast, Inc.*, 1 F.Supp.2d 397, 399-400 (D.N.J. 1998). The

8

RPC's are specifically made applicable to attorneys admitted to this Court by Local Civil Rule 103.1, which provides in relevant part:

> The Rules of Professional Conduct of the American Bar Association as revised by the New Jersey Supreme Court shall govern the conduct of the members of the bar admitted to practice in this Court, subject to such modifications as may be required or permitted by federal statute, regulation, court rule or decision of law.

L. CIV. R. 103.1(a). In determining whether to disqualify counsel, the Court must be satisfied that the movant has proved either that the RPC's are violated or that serious doubts exist as to the appropriateness of the representation. *Cordy v. Sherwin-Williams Co.*, 156 F.R.D. 575, 584 (D.N.J. 1994); *Kaselaan & D'Angelo Associates, Inc. v. D'Angelo*, 144 F.R.D. 235, 238 (D.N.J. 1992). "[T]he party seeking disqualification must carry a 'heavy burden' and must meet a 'high standard of proof' before a lawyer is disqualified.'" *Id.* (*quoting Evans v. Artek Systems Corp.*, 715 F.2d 788, 791 (2d Cir. 1983)). Here, DSCI is seeking disqualification and, therefore, the burden of proof rests with it.

The Court of Appeals for the Third Circuit has noted that "[a]lthough disqualification ordinarily is the result of a finding that a disciplinary rule prohibits an attorney's appearance in a case, disqualification never is automatic." *U.S. v. Miller*, 624 F.2d 1198, 1201 (3d Cir. 1980). Disqualification of counsel is a "'drastic measure which courts should hesitate to impose except when absolutely necessary.'" *Alexander v. Primerica Holdings, Inc.*, 822 F.Supp. 1099, 1114 (D.N.J. 1993) (*quoting Schiessle v. Stephens*, 717 F.2d 417, 420 (7th Cir. 1983)). Generally, motions to disqualify are disfavored because they "can have such drastic consequences." *Rohm and Haas Co. v. American Cyanamid Co.*, 187 F. Supp. 2d 221, 226 (D.N.J. 2001). As a result, careful scrutiny of the facts of each case is required to prevent unjust results. *See Montgomery*

9

*Acad. v. Kohn*, 50 F.Supp.2d 344, 349 (D.N.J. 1999). Furthermore, "[r]esolution of a motion to disqualify requires the court to balance 'the need to maintain the highest standards of the [legal] profession' against 'a client's right to freely choose his counsel.'" *Steel v. General Motors Corp.*, 912 F. Supp. 724, 733 (D.N.J. 1995) (citations omitted).

DSCI has moved to disqualify Blank Rome based on RPC 1.9(a), which states, in relevant part:

> A lawyer who has represented a client in a matter shall not thereafter represent another client in the same or a substantially related matter in which that client's interests are materially adverse to the interests of the former client unless the former client gives informed consent confirmed in writing.

The Court notes that the parties do not dispute that an attorney client relationship existed between DSCI and Blank Rome or that Blank Rome's current representation of Ucles is materially adverse to DSCI. Rather, the parties dispute whether Blank Rome's prior representation of DSCI is substantially related to the instant matter and whether Blank Rome received confidential information from DSCI that is damaging to DSCI in the context of this litigation. In determining whether a conflict exists under RPC 1.9, the Court employs the "substantial relationship test" recently articulated by the New Jersey Supreme Court as follows:

> Matters are substantially related if: (1) the lawyer for whom disqualification is sought received confidential information from the former client that can be used against that client in the subsequent representation of parties adverse to the former client, or (2) facts relevant to the prior representation are relevant and material to the subsequent representation.

*See Trupos*, 2010 WL 1641176, at * 3.

Here, Blank Rome should be disqualified because the matters involved in Blank Rome's current representation of Ucles are substantially related to those involved in its previous

10

representation of DSCI. At issue in the instant action is the application and meaning of various provisions of the parties' Shareholder Agreement, Amended Shareholder Agreement, Settlement Agreement, Ucles' Employment Agreement and its Amendment No. 2. Notwithstanding Blank Rome's attempt to create the impression that the substance of its prior representation of DSCI involved different provisions of the Employment Agreement and Shareholder Agreement than those upon which its current representation of Ucles is based, it is clear that the matters at issue in the prior litigation are related to the instant case. There is no question that there are common material facts present in both actions. The fact that during Blank Rome's prior representation of DSCI it handled multiple matters involving the same agreements that are now at issue in the instant action, makes it impossible to discern the type and scope of the information to which Blank Rome may have been privy.

### III.     CONCLUSION

For the reasons stated above, the Court finds that DSCI has satisfied its burden in establishing that RPC 1.9(a) requires the disqualification of Blank Rome as counsel for Ucles. Further, the Court notes that the parties represented during oral argument that the portion of the instant Motion seeking to compel Blank Rome to turnover the entirety of its file regarding its prior representation of DSCI has been resolved. Accordingly, DSCI's Motion [dkt. entry no. 67] is granted in part and denied in part, as follows. The application seeking to disqualify counsel is granted and the application seeking to compel the turnover of certain documents related to Blank Rome's prior representation of DSCI is denied as moot as counsel has agreed to produce the

requested materials.  An appropriate Order accompanies this Memorandum Opinion.

Dated: August 10, 2010.

s/ <i>Douglas E. Arpert</i>  
**DOUGLAS E. ARPERT**  
**UNITED STATES MAGISTRATE JUDGE**